## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **NICHOLAS VINSON** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Action No.** |
| **PCS ADMINISTRATION (USA), INC.,** | § | |
| **AGRIUM US INC., AND** | § | |
| **NUTRIEN US LLC** | § | |
| *Defendants.* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Plaintiff Nicholas Vinson ("Plaintiff" or "Mr. Vinson") brings this action against Defendants PCS Administration (USA), Inc., Agrium US Inc., and Nutrien US LLC (collectively, "Nutrien," the "Company," or "Defendants") and in support shows the Court the following:

### I.    <u>NATURE OF THE ACTION</u>

1.    This lawsuit arises from Nutrien's unlawful actions in:

(i) refusing to provide a reasonable accommodation for Mr. Vinson's sincerely held religious beliefs by allowing him an alternative to Nutrien's requirement that he take the COVID-19 vaccination (the "Vaccine");

(ii) refusing to engage in the interactive process after Mr. Vinson expressed his sincerely held religious beliefs that prevented him from taking the Vaccine;

(iii) terminating Mr. Vinson's position as a Senior Advisor because of his sincerely held religious beliefs; and

(iv) retaliating against Mr. Vinson for engaging in protected activity in appealing Nutrien's discriminatory decision and failure to accommodate his sincerely held religious

1

beliefs both internally and through the EEOC by engaging in conduct that includes, but is not necessarily limited to:

    (a) failing to assist him in finding a permanent position within Nutrien that would not require he take the Vaccine;

    (b) failing to give him a reasonable amount of time to locate another permanent position within Nutrien himself;

    (c) actively attempting to prevent him from securing such alternative position at all, or by the date Nutrien required for him to not be considered a "new hire" who would be required to take the Vaccine; and

    (d) by refusing to accept internal recommendations from one of his supervisors to consider him for a position within Nutrien's upper management.

2.    Rather than engage in the interactive process or make any attempt to accommodate Mr. Vinson's sincerely held religious beliefs, Nutrien instead discriminated and retaliated against him in an obvious attempt to shed from its senior ranks any person who dared place their sincerely held religious beliefs over the Company's unreasonable, unlawful, Vaccine Mandate.

## II.    <u>PARTIES</u>

3.    Plaintiff Nicholas Vinson is a natural person residing in Hutchinson County, Texas.

4.    Defendant PCS Administration (USA), Inc. ("PCS") is a foreign for-profit corporation with its principal place of business located at 5296 Harvest Lake Dr., Loveland, Colorado 80538. PCS may be served with process by serving its Registered Agent, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218, or wherever it may be found.

2

5.      Defendant Agrium US Inc ("Agrium") is a foreign for-profit corporation with its principal place of business located at 5296 Harvest Lake Dr., Loveland, Colorado 80538.  Agrium may be served with process by serving its Registered Agent, CT Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136, or wherever it may be found.

6.      Defendant Nutrien US LLC ("Nutrien US") is a foreign for-profit corporation with its principal place of business located at 5296 Harvest Lake Dr., Loveland, Colorado 80538. Nutrien US may be served with process by serving its Registered Agent, C T Corporation System, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136, or wherever it may be found.

### III.    JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under Title VII, which is a federal statute.

8.      This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because it is so closely related to the federal claims that they form a single case or controversy.

9.      This Court has jurisdiction over Defendants because Defendants conduct substantial business transactions in the Northern District of Texas and have sufficient minimum contacts with this state to be subject to this Court's jurisdiction.

10.     Venue of this action is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District and Division.

### IV.    FACTUAL ALLEGATIONS

**A. Employment Background Information.**

11.     On April 3, 2006, Mr. Vinson began working for Nutrien in the role of Urea Loadout Operator.

3

12.    Over the course of the next fourteen years, Mr. Vinson worked diligently for the Company and, as a result of his recognized hard work and dedication, moved up through the ranks. Over the years, he worked in roles including Technician, Specialist, Manager, and Supervisor.

13.    During his tenure with Nutrien, Mr. Vinson did not receive a negative performance review and was never placed on a personal improvement plan.

14.    Eventually, Mr. Vinson's hard work resulted in his promotion to the position of Senior Advisor for Learning and Development ("Senior Advisor") in January 2021, well over a year after the COVID-19 pandemic (the "Pandemic") first entered the United States.

15.    In additional recognition of his exceptional work ethic and dedication, on February 8, 2021, Mr. Vinson was one of only fifteen employees to receive Nutrien's "Our World Awards" recognizing his exceptional performance during the height of the Pandemic in 2020.

**B. Nutrien's Vaccine Mandate and Mr. Vinson's Request for Reasonable Accommodation**

16.    On August 26, 2021, only three days after the U.S. Food and Drug Administration ("FDA") approved the Pfizer-BioNTech COVID-19 Vaccine, Nutrien announced it would require all senior leaders, new hires, and employees who engage in travel for work to become vaccinated (the "Mandate"). Nutrien's Mandate applied to Mr. Vinson's position as Senior Advisor.

17.    Although the Senior Advisor role eventually would require travel, Mr. Vinson had not been traveling for this role and was never required to travel for the role through the date Nutrien terminated his employment as Senior Advisor.

18.    Indeed, at the time he was terminated from his Senior Advisor position, **travel was still suspended on a Company-wide basis**.

4

19.    In early November 2021, Mr. Vinson submitted a request for accommodation seeking an exemption from the Mandate based on his sincerely held religious beliefs negating his ability to take the Vaccine (the "Accommodation Request").

20.    In the Accommodation Request, Mr. Vinson stated he was willing to provide proof of a negative COVID-19 test prior to engaging in any Company travel to ensure he was not carrying the virus when he arrived on-site. Moreover, Mr. Vinson stated he would continue to practice good personal hygiene and wear a mask as required while on-site and while traveling.

**C. Nutrien's Denial of Mr. Vinson's Reasonable Accommodation Request and Refusal to Engage in the Interactive Process**

21.    On Friday, November 5, 2021, Danielle Good, Nutrien's Human Resources Director, presented Mr. Vinson's Accommodation Request to Nutrien's Accommodation Review Committee (the "Committee").

22.    One business day later, on Monday, November 8, 2021, the Committee issued a letter summarily denying the Accommodation Request without engaging in the interactive process at all (the "First Denial Letter").

23.    In its First Denial Letter, the Committee stated its opinion relating to Mr. Vinson's—and all others'—religious beliefs, stating "there is no conflict between ***any religious belief*** and the COVID-19 vaccination requirement." (emphasis added).

24.    The First Denial Letter makes clear Nutrien refused to engage in the interactive process at all by declaring the very act of allowing Mr. Vinson to remain unvaccinated constitutes an "undue hardship"—without addressing, in any manner, Mr. Vinson's offerings to test, mask, and engage in any other safety protocols that do not violate his religious beliefs.

25.     Nutrien also made no attempt to provide credibility to the scope of its Vaccine Mandate which required vaccination of those who would eventually need to travel, all new hires regardless of travel or job duties, and all senior leaders, regardless of travel or job duties.

26.     Nutrien presented Mr. Vinson with the First Denial Letter on November 9, 2021, and asked to meet with him, his supervisor, Kim Braun, and Ms. Good to discuss his "exit transition plan" a few hours later.

27.     After fourteen (14) years of exceptional service with Nutrien, Mr. Vinson was rewarded with an "exit transition plan" only six days after making a request for reasonable accommodation.

28.     The exit meeting took place on November 12, 2021. During the meeting, Ms. Good reiterated the First Denial Letter's approach of refusing to engage in the interactive process and instead informed Mr. Vinson his last day with the Company would be December 31, 2021.

29.     Indeed, despite that the Mandate allegedly applied only to new hires, senior leaders,[1] and jobs requiring travel, Nutrien did not offer Mr. Vinson any other position in the Company that did not require travel or was not in senior leadership, and did not even discuss the accommodations he suggested or offer any alternatives that would allow him to continue working at the Company.

30.     Critically, Ms. Good shared she was not aware of the Company granting any religious accommodation request at all.[2]

---

[1]     It is worth noting the lack of any reasonable basis for imposing the Vaccine Mandate on new hires and senior leaders, regardless of specific job duties or travel requirements—further demonstrating lack of any valid basis for the arbitrary scope of the Mandate.

[2]     This is particularly troublesome for Nutrien given Judge Ho's dissent in *Sambrano v. United Airlines, Inc.*, noting "Title VII forbids employers from retaliating against employees who attempt to exercise their statutory rights" and noting United Airlines may have done just that after the CEO "told employees . . . that 'very few' religious exemptions to the vaccine mandate would be granted, and that anyone who even attempted to request one would be 'putting [their] job on the line.'" 19 F.4th 839, 840 (5th Cir. Dec. 13, 2021) ("Through both its policy and its official

31.     Instead, Ms. Good told Mr. Vinson he should make the "right choice" and—despite his religious objections—take the Vaccine just as she had.

**D. Mr. Vinson's Submission of Antibody Test Results and Request for Reconsideration of Accommodation Denial and Delay of Employment Termination Date**

32.     Based on Nutrien's belief that Mr. Vinson's unvaccinated status created a *de facto* undue hardship on the Company, Mr. Vinson took an antibody test to show the Company he had the same antibodies the Vaccine is intended to create.

33.     On November 30, 2021, Mr. Vinson emailed Ms. Good attaching his test results indicating the antibodies protecting against the SARS-CoV-2 spike protein receptor binding domain (RBD) are in fact detected in his body (the "Antibody Test").

34.     In his email, Mr. Vinson reiterated his willingness to provide negative COVID-19 test results and engage in all COVID-19 safety protocols when traveling and on work sites, including wearing a mask anytime Nutrien deemed necessary (the "Supplemental Request").

35.     Mr. Vinson's Supplemental Request would have been a very reasonable accommodation to Nutrien's Vaccine Mandate, but Nutrien failed to even consider it.

36.     On December 9, 2021, Mr. Vinson again met with Ms. Good. Notably, his supervisor, Ms. Braun, did not attend.

37.     During the meeting, Mr. Vinson asked various questions relating to Nutrien's denial of his Accommodation Request and his Supplemental Request, and sought clarity over the information the Committee relied on in reaching its decision that Mr. Vinson's unvaccinated status created a *de facto* undue hardship on the Company.

---

statements to employees, United has demonstrated a 'calloused approach to' and 'apparent disdain for' people of faith") (Ho, J, dissenting).

4868-2693-0592v.1

38.    Ms. Good indicated Mr. Vinson's questions were "good," but stated she was unable to answer them but stated she would get back to him with answers to his questions.

39.    On December 13, 2021, Ms. Good informed Mr. Vinson his employment termination date changed from December 31, 2021, to February 28, 2022, presumably so Nutrien would have time to review and answer his questions.  She also told Mr. Vinson travel at Nutrien was still suspended and was not expected to resume until March or April of 2022, at the earliest.

**E.  Nutrien's Second Denial of Mr. Vinson's Reasonable Accommodation Request and Arbitrary Change of Employment Termination Date**

40.    On January 6, 2022, at the end of the day, Mr. Vinson received a request to meet with Human Resources early the next morning. On January 7, 2022, Mr. Vinson met with Ms. Good who informed Vinson that Nutrien was taking a hardline stance on the Supplemental Request. She informed him Nutrien had again denied his request for accommodation, was again refusing to engage in the interactive process or offer him an alternative position, and that his employment would end February 1, 2022.

41.    As punishment for Mr. Vinson's request for a reasonable accommodation and his request for an explanation on how the Committee reached their decision to deny his request without engaging in the interactive process, Nutrien arbitrarily hastened Mr. Vinson's termination date by a month, without any explanation or answers to questions Ms. Good herself admitted were valid.

42.    Also on January 7, 2022, the Committee provided Mr. Vinson with a second letter denying his request for accommodation of his sincerely held religious belief (the "Second Denial Letter").

43.    In the Second Denial Letter, the Committee doubled down on its prior opinion that "there is no conflict between ***any religious belief*** and the COVID-19 vaccination requirement"

8

and that "[a] request for exemption due to ***a personal preference*** not to receive a vaccine is not protected by law." (emphasis added).

44.     The Committee refused to acknowledge Mr. Vinson's Antibody Test results and again ignored his requests that he be allowed to submit a negative test prior to travel, his offer to wear a mask, and again refused to offer any alternative accommodation.

45.     Instead, the Committee repeated its opinion that Mr. Vinson's unvaccinated status was a *de facto* undue hardship, and his employment would be terminated effective February 1, 2022.

46.     Moreover, in response to one of Mr. Vinson's questions regarding the impact of Texas Executive Order GA-40 which strictly prohibits the Vaccine Mandate in Texas, the Committee stated OSHA's Emergency Temporary Standard ("ETS") preempted Texas law and was currently in effect.

## F. Nutrien's Refusal to Address or Acknowledge Changes in Data, Law, or Circumstances

47.     On January 13, 2022, the Supreme Court of the United States stayed OSHA's ETS, thereby removing any barrier to the applicability of Texas Executive Order GA-40 to Nutrien's Vaccine Mandate by legally prohibiting the forced vaccination of employees like Mr. Vinson.

48.     Despite that, Nutrien refused to withdraw its Mandate or take Mr. Vinson's objections into consideration. It also refused to acknowledge that even OSHA (who it previously relied on entirely) declared that testing and masking were viable and safe alternatives to vaccination.

49.     On January 20, 2022, Mr. Vinson shared an updated report from the Centers for Disease Control and Prevention ("CDC") with Ms. Good showing natural immunity alone—

including the type Mr. Vinson documented via his Antibody Test—provides *more* protection against recent strands of COVID-19 than does the Vaccine alone.

50.     On January 25, 2022, Ms. Good responded to Mr. Vinson's January 20 email stating the Committee "reads the report as the CDC supporting vaccinations and boosters as the safest strategy to combat Covid."

51.     Ms. Good did not address Mr. Vinson's observation that the scientific data from the CDC did not support Nutrien's conclusion that Mr. Vinson's unvaccinated status posed an undue hardship on the Company, especially when considering his natural immunity and willingness to test and wear a mask and/or engage in other safety protocols.

52.     In a direct refusal to acknowledge the changing legal and scientific landscape, Ms. Good told Mr. Vinson "[t]he Committee's decision regarding your current role remains unchanged and your request is considered closed."

53.     Nutrien ignored the Supreme Court's decision, the law, the CDC report, and Mr. Vinson's reasonable Accommodation Requests in making its unlawful decision to terminate Mr. Vinson's employment.

54.     On February 1, 2022, Mr. Vinson's employment as Senior Advisor for Nutrien ended. This is despite that: (1) the Senior Advisor position *still did not require travel* and was not expected to require travel for at least a few more months; (2) the OSHA ETS had been invalidated by the United States Supreme Court and withdrawn, leaving in place Texas Executive Order GA-40 *prohibiting the Mandate*; (3) the CDC confirmed Mr. Vinson's natural immunity is just as good—*if not better*—than Vaccine-created immunity and new data is consistently emerging supporting the same; (4) Nutrien never offered Mr. Vinson an accommodation or engaged in the interactive process or in any manner attempted to accommodate Mr. Vinson's sincerely held

10

religious belief; and (5) Mr. Vinson has never received a ranking below "excellent" on any evaluation at Nutrien and has never had any performance issues whatsoever during his time with Nutrien.

**G.  Nutrien Forces Mr. Vinson to Find, Apply, and Interview for Another Job Within the Company**

55.    As a result of Nutrien's decision to terminate Mr. Vinson from his Senior Advisor position, Mr. Vinson was forced to locate another open job within Nutrien himself if he wished to remain with Company.  Mr. Vinson was then required to apply for the open position and interview for the open position in order for him to maintain any form of employment with Nutrien.

56.    On December 6, 2021, after Nutrien made the decision to terminate him from his employment as Senior Advisor, Mr. Vinson identified an I/E Technician position within Nutrien at the Borger Nitrogen Operations ("BNO") location.  On that same day, Mr. Vinson informed Nutrien that he would be applying for that position, but was applying for the position under protest because he believed that his rights were being ignored by Nutrien, and because the new position would pay substantially less than his Senior Advisor position.

57.    Nutrien informed Mr. Vinson that he would have to apply and interview for the open position, despite the fact that Mr. Vinson had previously held the same position within Nutrien and never had any performance issues.  Such a requirement is in stark contrast to Nutrien's treatment of other employees who have requested a transfer.  Specifically, Nutrien frequently allows employees to transfer between departments within the Company without requiring them to apply and interview for the position.

58.    In fact, as of October 13, 2022, Nutrien hired at least two (2) individuals without interviews and without posting the open positions anywhere.  The requirement that Mr. Vinson apply and interview for the position at Nutrien's BNO location was in retaliation to Mr. Vinson

11

exercising his statutory right to request a religious accommodation related to Nutrien's COVID Vaccine Mandate.

59.    On January 7, 2022, Mr. Vinson spoke with the General Manager for the I/E Department which he had applied to work in on December 6, 2021.

60.    During that discussion, the General Manager told Mr. Vinson he was a very strong candidate for the position, and indicated his belief that the role could be Mr. Vinson's before his employment ended on February 1, 2022.

61.    Securing the new position prior to this date was vital. If Mr. Vinson's new start date fell after the termination date, he would have been treated as a "new hire" and required to take the Vaccine before starting his new position--per Nutrien's Mandate at that time.

62.    On January 18, 2022, Mr. Vinson interviewed for the I/E Technician position with four individuals from Nutrien.  Three Nutrien employees who had participated in each of the previous interviews for the position were absent from the interview for no apparent reason.

63.    During the interview, several of the individuals conducting the interview asked questions clearly aimed at gathering information to support Nutrien's unlawful termination from his Senior Advisor position and prevent him from being a viable candidate for the I/E role he was clearly qualified to fill.

64.    Specifically, they asked Mr. Vinson about his 5-10 year career plan, how the I/E position fits into that plan specifically, and how coming back to the BNO plant is part of that plan. These questions were asked specifically with the knowledge that Mr. Vinson desired to keep his Senior Advisor position, and was actively attempting to be reinstated to that position. On January 25, 2022, Mr. Vinson received an offer letter for the I/E Technician position.  The compensation

for the I/E Technician position was significantly less than Mr. Vinson's compensation as a Senior Advisor.

65.    On January 27, 2022, Mr. Vinson received an email from the Human Resources department indicating his start date in Nutrien's HR management program was pushed to after February 1, 2022, potentially subjecting him to the same Vaccine Mandate because he would be considered a new hire.

66.    Eventually the Human Resources department corrected the "system error," and appropriately noted his start date to reflect the accurate start date of January 24, 2022.

**H. Nutrien Retaliates Against Mr. Vinson After He Files a Charge of Discrimination**

67.    On February 7, 2022, Mr. Vinson's counsel sent Nutrien a letter providing notice of Mr. Vinson's intent to file a Charge of Discrimination with the Texas Workforce Commission ("TWC") and the Equal Employment Opportunity Commission ("EEOC").

68.    The letter requested Mr. Vinson's reinstatement to his Senior Advisor position by February 21, 2022. Nutrien did not respond to that letter or request.

69.    On February 22, 2022, a day after the letter's stated deadline to reinstate Mr. Vinson's employment, Nutrien lifted its Vaccine Mandate for new hire employees at the BNO location. On March 2, 2022, Nutrien lifted its masking mandate at the BNO location, and no longer required weekly testing for COVID.

70.    Despite these significant changes, Nutrien did not respond to Mr. Vinson's letter or reinstate his employment as a Senior Advisor.

71.    On March 3, 2022, Mr. Vinson filed his Charge of Discrimination with the TWC and EEOC.

72.    On March 14, 2022, Nutrien released information related to the Vaccine Mandate for certain new hires. Specifically, the information stated:

13

> **Vaccination Required for Certain New hires:** All new hires are required to be vaccinated if the position: (a) is designated as a senior leader; (b) requires travel by air; (c) requires access to an office; or (d) is one for which vaccination is required by that specific business unit.

73.     On April 11, 2022, Nutrien posted an employment opening for Mr. Vinson's former Senior Advisor position, indicating that Nutrien did not intend to reinstate Mr. Vinson to his former position. Nutrien only posted Mr. Vinson's former position after Mr. Vinson filed his Charge of Discrimination with the TWC and EEOC.

74.     On May 9, 2022, Nutrien lifted its travel ban, allowing travel to resume for all employees at Nutrien. Nutrien also lifted its Vaccine Mandate for travel.

75.     Even though the Vaccine Mandate and travel ban were lifted as of May 9, 2022, Nutrien did not transfer Mr. Vinson back to his former position of Senior Advisor. In fact, Nutrien did not even offer Mr. Vinson the opportunity to move back to his former position of Senior Advisor.

76.     On or around October 6, 2022, Mr. Vinson met with the General Manager at the BNO location to discuss the potential for Vinson to assist in a special assignment project. The special assignment was to help with training at the BNO site and possibly transition out of the I/E shop and back into a role more closely aligned with Mr. Vinson's prior Senior Advisor role.

77.     Mr. Vinson indicated he was willing to consider the training job, and his supervisor responded to "give [him] a month or so to get things lined out with HR."

78.     On or around October 13, 2022, Mr. Vinson's immediate supervisor asked him whether he would he consider dropping "all things related to COVID" if he were offered a different job at the BNO location.

79.     This statement clearly indicated that Mr. Vinson would not be considered for a promotion unless he dropped his legally protected Charge.

14

80.    Mr. Vinson's immediate supervisor then stated that he should talk to the plant manager about the new job because that manager "was not aware of anything that happened" to Mr. Vinson the preceding year.

81.    This comment implied the supervisor's belief that Mr. Vinson would have better luck with that application because the plant manager could not retaliate against Mr. Vinson since he was not aware of his protected activity.

82.    On January 24, 2023, Mr. Vinson interviewed with Kandace Allen for the position of NAS Training Advisor for Nutrien Retail.  Mr. Vinson received an offer for that position on February 3, 2023.

83.    On February 9, 2023, after giving the Nutrien BNO location notice that he would be leaving for a new position with Nutrien Retail, Mr. Vinson had an encounter with the General Manager of the BNO location during which he learned he had clearly been discriminated  and retaliated against.

84.    Specifically, the General Manager told Mr. Vinson that he had suggested Mr. Vinson to fill a vacant position within Nutrien's upper management but was "**given a HARD NO.**"

85.    The General Manager said he was not given any explanation for why Mr. Vinson was rejected, and asked Mr. Vinson if he knew why and asked whether Mr. Vinson had a lawsuit pending against Nutrien.

86.    The General Manager also asked Mr. Vinson "What the [expletive] did you do to John Horne?"

87.    John Horne is the Vice President Safety Health & Environmental at Nutrien, and was involved in the decision-making for upper management hires within Nutrien.

15

88.    John Horne also led the COVID Committee in charge of reviewing policies and making decisions about COVID-related issues, including whether to grant accommodation requests, like Mr. Vinson's.

89.    The General Manager also told Mr. Vinson that John Horne appeared to have a "personal vendetta" against Mr. Vinson, and stated he "assumed that it had something to do with COVID" and Mr. Vinson's vaccination status.

90.    Nutrien's actions towards Mr. Vinson are unlawful, unjust, discriminatory, and must be stopped.

## V.    CAUSES OF ACTION

## Count 1: Religious Discrimination in Violation of Title VII

91.    Each of the foregoing paragraphs is incorporated herein by reference for all purposes.

92.    Mr. Vinson holds a sincere religious belief that prohibits him from receiving the Vaccine in accordance with Nutrien's Vaccine Mandate.  Mr. Vinson informed Nutrien of those sincerely held religious beliefs and requested religious accommodations from the Mandate. Nutrien refused to engage in the interactive process with Mr. Vinson regarding his sincerely held religious beliefs.

93.    Irrespective of the interactive process, Nutrien failed to provide Mr. Vinson with reasonable accommodations for his religious beliefs.

94.    Instead of engaging in the interactive process or providing Mr. Vinson with a reasonable accommodation, Nutrien subjected Mr. Vinson to an adverse employment action. Indeed, Nutrien terminated Mr. Vinson's role as Senior Advisor because of Mr. Vinson's sincerely held religious belief.  Additionally, Nutrien forced Mr. Vinson to apply for and interview for a

16

lower position within Nutrien, and blocked Mr. Vinson from being considered for an upper management position because of his sincerely held religious beliefs.

95.     Nutrien's refusal to engage in the interactive process and/or consider a reasonable accommodation for Mr. Vinson's sincerely held religious belief violated Title VII of the Civil Rights Act of 1964.

96.     By failing to engage in the interactive process or offer any reasonable accommodation, Nutrien's discriminatory actions were intentional and/or reckless in violation of Title VII.

97.     Nutrien's discriminatory actions have caused Mr. Vinson severe emotional distress as he has been forced to deal with his termination, demotion, and other adverse employment actions described above.

98.     Nutrien's violation has harmed Mr. Vinson, and will continue to harm Mr. Vinson. Accordingly, Mr. Vinson seeks all available damages under the law, including back pay, front pay, compensatory damages for his emotional distress, punitive damages for Nutrien's intentional discrimination, and attorneys' fees as allowable by law.

99.     Mr. Vinson has exhausted his administrative remedies on this claim, having received the notice of right to sue from the EEOC, dated October 31, 2023, after filing his Charge of Discrimination with both the TWC and the EEOC.

**Count 2: Failing to Engage in the Interactive Process in Violation of Title VII**

100.     Each of the foregoing paragraphs is incorporated herein by reference for all purposes.

101.     Mr. Vinson holds a sincere religious belief that precludes him from receiving the Vaccine in accordance with Nutrien's Vaccine Mandate.  Mr. Vinson informed Nutrien of those

17

sincerely held religious beliefs and requested religious accommodations from the Mandate. Nutrien refused to engage in the interactive process with Mr. Vinson regarding his sincerely held religious belief. Instead, Nutrien terminated Mr. Vinson from his Senior Advisor position, forced him to re-apply and interview for another job within the Company, and continued to punish him by refusing to consider him for upper management positions within the Company.

102.    By failing to engage in the interactive process, Nutrien's discriminatory actions were intentional and/or reckless in violation of Title VII.

103.    Nutrien's discriminatory actions have caused Mr. Vinson severe emotional distress as he has been forced to deal with his termination, demotion, and other adverse employment actions described above.

104.    Nutrien's violation has harmed Mr. Vinson, and will continue to harm Mr. Vinson. Accordingly, Mr. Vinson seeks all available damages under the law, including back pay, front pay, compensatory damages for his emotional distress, punitive damages for Nutrien's intentional discrimination, and attorneys' fees as allowable by law.

105.    Nutrien violated Title VII by failing to engage in the interactive process with Mr. Vinson.

106.    Mr. Vinson has exhausted his administrative remedies on this claim, having received the notice of right to sue from the EEOC, dated October 31, 2023, after filing his Charge of Discrimination with both the TWC and the EEOC.

### Count 3: Failure to Accommodate in Violation of Title VII

107.    Each of the foregoing paragraphs is incorporated herein by reference for all purposes.

108.    Mr. Vinson holds a sincere religious belief that precludes him from receiving the Vaccine in accordance with Nutrien's Vaccine Mandate.  Mr. Vinson informed Nutrien of those sincerely held religious beliefs and requested religious accommodations from the Mandate. Nutrien refused to engage in the interactive process with Mr. Vinson, and refused to provide a reasonable accommodation as a result of his sincerely held religious belief.  Instead, Nutrien terminated Mr. Vinson from his Senior Advisor position, forced him to re-apply and interview for another job within the Company, and continued to punish him by refusing to consider him for upper management positions within the Company.

109.    By failing to offer any reasonable accommodation, Nutrien's discriminatory actions were intentional and/or reckless in violation of Title VII.

110.    Nutrien's discriminatory actions have caused Mr. Vinson severe emotional distress as he has been forced to deal with his termination, demotion, and other adverse employment actions described above.

111.    Nutrien's violation has harmed Mr. Vinson, and will continue to harm Mr. Vinson. Accordingly, Mr. Vinson seeks all available damages under the law, including back pay, front pay, compensatory damages for his emotional distress, punitive damages for Nutrien's intentional discrimination, and attorneys' fees as allowable by law.

112.    Nutrien violated Title VII by failing to provide a reasonable accommodation for Mr. Vinson's sincerely held religious belief.

113.    Mr. Vinson has exhausted his administrative remedies on this claim, having received the notice of right to sue from the EEOC, dated October 31, 2023, after filing his Charge of Discrimination with both the TWC and the EEOC.

**Count 4: Religious Discrimination in Violation of Texas Labor Code**

114.    Each of the foregoing paragraphs is incorporated herein by reference for all purposes.

115.    Mr. Vinson holds a sincere religious belief that precludes him from receiving the Vaccine in accordance with Nutrien's Vaccine Mandate.  Mr. Vinson informed Nutrien of those sincerely held religious beliefs and requested religious accommodations from the Mandate. Nutrien refused to engage in the interactive process with Mr. Vinson regarding his sincerely held religious belief.

116.    Irrespective of the interactive process, Nutrien failed to provide Mr. Vinson with reasonable accommodations for his religious beliefs.

117.    Instead of engaging in the interactive process or providing Mr. Vinson with a reasonable accommodation, Nutrien subjected Mr. Vinson to an adverse employment action. Indeed, Nutrien terminated Mr. Vinson's role as Senior Advisor because of Mr. Vinson's sincerely held religious belief.  Additionally, Nutrien forced Mr. Vinson to apply for and interview for a lower position within Nutrien, and blocked Mr. Vinson from being considered for an upper management position because of his sincerely held religious beliefs.

118.    Nutrien's refusal to engage in the interactive process and/or consider a reasonable accommodation for Mr. Vinson's sincerely held religious belief violated Chapter 21 of the Texas Labor Code.

119.    By failing to engage in the interactive process or offer any reasonable accommodation, Nutrien's discriminatory actions were intentional and/or reckless in violation of the Texas Labor Code.

20

120.     Nutrien's discriminatory actions have caused Mr. Vinson severe emotional distress as he has been forced to deal with his termination, demotion, and other adverse employment actions described above.

121.     Nutrien's violation has harmed Mr. Vinson, and will continue to harm Mr. Vinson. Accordingly, Mr. Vinson seeks all available damages under the law, including back pay, front pay, compensatory damages for his emotional distress, punitive damages for Nutrien's intentional discrimination, and attorneys' fees as allowable by law.

122.     Mr. Vinson has exhausted his administrative remedies on these claims, having received the notice of right to sue from the EEOC, dated October 31, 2023, after filing his charge of discrimination with both the TWC and the EEOC.

### Count 5: Failing to Engage in the Interactive Process in Violation of Texas Labor Code

123.     Each of the foregoing paragraphs is incorporated herein by reference for all purposes.

124.     Mr. Vinson holds a sincere religious belief that precludes him from receiving the Vaccine in accordance with Nutrien's Vaccine Mandate.  Mr. Vinson informed Nutrien of those sincerely held religious beliefs and requested religious accommodations from the Mandate. Nutrien refused to engage in the interactive process with Mr. Vinson regarding his sincerely held religious belief.  Instead, Nutrien terminated Mr. Vinson from his Senior Advisor position, forced him to re-apply and interview for another job within the Company, and continued to punish him by refusing to consider him for upper management positions within the Company.

125.     By failing to engage in the interactive process, Nutrien's discriminatory actions were intentional and/or reckless in violation of the Texas Labor Code.

4868-2693-0592v.1

126.    Nutrien's discriminatory actions have caused Mr. Vinson severe emotional distress as he has been forced to deal with his termination, demotion, and other adverse employment actions described above.

127.    Nutrien's violation has harmed Mr. Vinson, and will continue to harm Mr. Vinson. Accordingly, Mr. Vinson seeks all available damages under the law, including back pay, front pay, compensatory damages for his emotional distress, punitive damages for Nutrien's intentional discrimination, and attorneys' fees as allowable by law.

128.    Nutrien violated the Texas Labor Code by failing to engage in the interactive process with Mr. Vinson.

129.    Mr. Vinson has exhausted his administrative remedies on this claim, having received the notice of right to sue from the EEOC, dated October 31, 2023, after filing his Charge of Discrimination with both the TWC and the EEOC.

## Count 6: Failure to Accommodate in Violation of Texas Labor Code

130.    Each of the foregoing paragraphs is incorporated herein by reference for all purposes.

131.    Mr. Vinson holds a sincere religious belief that precludes him from receiving the Vaccine in accordance with Nutrien's Vaccine Mandate.  Mr. Vinson informed Nutrien of those sincerely held religious beliefs and requested religious accommodations from the Mandate. Nutrien refused to engage in the interactive process with Mr. Vinson, and refused to provide a reasonable accommodation as a result of his sincerely held religious belief.  Instead, Nutrien terminated Mr. Vinson from his Senior Advisor position, forced him to re-apply and interview for another job within the Company, and continued to punish him by refusing to consider him for upper management positions within the Company.

132.    By failing to offer any reasonable accommodation, Nutrien's discriminatory actions were intentional and/or reckless in violation of the Texas Labor Code.

133.    Nutrien's discriminatory actions have caused Mr. Vinson severe emotional distress as he has been forced to deal with his termination, demotion, and other adverse employment actions described above.

134.    Nutrien's violation has harmed Mr. Vinson, and will continue to harm Mr. Vinson. Accordingly, Mr. Vinson seeks all available damages under the law, including back pay, front pay, compensatory damages for his emotional distress, punitive damages for Nutrien's intentional discrimination, and attorneys' fees as allowable by law.

135.    Nutrien violated the Texas Labor Code by failing to provide a reasonable accommodation for Mr. Vinson's sincerely held religious belief.

136.    Mr. Vinson has exhausted his administrative remedies on this claim, having received the notice of right to sue from the EEOC, dated October 31, 2023, after filing his Charge of Discrimination with both the TWC and the EEOC.

## Count 7: Retaliation

137.    Each of the foregoing paragraphs is incorporated herein by reference for all purposes.

138.    Mr. Vinson participated in a statutorily protected activity pursuant to Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code.  Specifically, Mr. Vinson requested a reasonable accommodation from Nutrien regarding his sincerely held religious belief which prohibited him from obtaining the Vaccine as required by Nutrien's Mandate and appealed that decision when it was denied.  He also complained that he felt he was being discriminated against for his sincerely held religious beliefs.

4868-2693-0592v.1

139.    Instead of engaging in the interactive process or providing Mr. Vinson with a reasonable accommodation for his sincerely held religious beliefs, Nutrien subjected Mr. Vinson to an adverse employment action.  Indeed, Nutrien terminated Mr. Vinson's role as Senior Advisor because of Mr. Vinson's sincerely held religious belief, and forced Mr. Vinson to apply and interview for a demoted position within the Company.

140.    Further, Nutrien continued its retaliatory efforts by refusing to consider Mr. Vinson for an upper management position because of his sincerely held religious beliefs, and because he filed a Charge of Discrimination with the EEOC and TWC. Specifically, Mr. Vinson was subjected to John Horne's personal vendetta by being blocked from an upper management position, and was informed he would only be considered for another job at the BNO location if he would "drop all things related to COVID."

141.    Mr. Vinson's religious beliefs and engagement in protected activity were the cause of Nutrien's adverse employment action.

142.    Nutrien has retaliated against Mr. Vinson for engaging in protective activity and for filing a Charge of Discrimination with the TWC and EEOC by: terminating him from his position as Senior Advisor; forcing him to apply and interview for a departmental transfer when others are able to freely transfer between departments; requesting that he "drop all things related to COVID" in order to be considered for another job within the BNO plant; refusing to consider Mr. Vinson for an upper management position because of his vaccination status; and allowing John Horne's personal vendetta against Mr. Vinson to hinder Mr. Vinson's ability to once again climb the corporate ladder within Nutrien.

143.    By retaliating against Mr. Vinson for engaging in protected activity, Nutrien has violated Title VII and the Texas Labor Code.  This violation has harmed Mr. Vinson, and will

24

continue to harm Mr. Vinson. Accordingly, Mr. Vinson seeks all available damages under the law, including back pay, front pay, compensatory damages for his emotional distress, punitive damages for Nutrien's intentional discrimination, and attorneys' fees as allowable by law.

144.    Mr. Vinson has exhausted his administrative remedies on this claim, having received the notice of right to sue from the EEOC, dated October 31, 2023, after filing his charge of discrimination with both the TWC and the EEOC.

## VI.    JURY TRIAL

145.    Mr. Vinson requests a jury trial on all issues upon which there is a right to a jury trial.

## VII.    PRAYER FOR RELIEF

Based on the foregoing, Plaintiff Nicholas Vinson respectfully requests that this Court grant the following relief:

a.  Declare that Nutrien has discriminated against Mr. Vinson because of his sincerely held religious beliefs in violation of Title VII;

b.  Declare that Nutrien has discriminated against Mr. Vinson because of his sincerely held religious beliefs in violation of the Texas Labor Code;

c.  Declare that Nutrien has violated Title VII by failing to engage in the interactive process in response to Mr. Vinson's requests for accommodations to its Vaccine Mandate;

d.  Declare that Nutrien has violated the Texas Labor Code by failing to engage in the interactive process in response to Mr. Vinson's requests for accommodations to its Vaccine Mandate;

4868-2693-0592v.1

e.   Declare that Nutrien has violated Title VII by discriminating against Mr. Vinson by failing to provide a reasonable accommodations to its Vaccine Mandate;

f.   Declare that Nutrien has violated the Texas Labor Code by discriminating against Mr. Vinson by failing to provide a reasonable accommodations to its Vaccine Mandate;

g.   Declare that Nutrien has violated Title VII by retaliating against Mr. Vinson for engaging in protected activity;

h.   Declare that Nutrien has violated the Texas Labor Code by retaliating against Mr. Vinson for engaging in protected activity;

i.   Award Mr. Vinson damages, including back pay, reinstatement or front pay, pre-judgment interest, post-judgment interest, punitive damages, and compensatory damages;

j.   Award Mr. Vinson reasonable attorneys' fees and costs; and

k.   Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Michael A. Harvey*
**MICHAEL A. HARVEY**
State Bar No. 24058352
Federal ID No. 917759
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone:  (713) 222-4015
Facsimile:  (713) 222-5834
mharvey@munsch.com

**ATTORNEYS IN CHARGE FOR**
**PLAINTIFF NICHOLAS VINSON**

26

**OF COUNSEL:**

**CLAIRE E. CARROLL**
State Bar No. 24092224
**MUNSCH HARDT KOPF & HARR, P.C.**
ccarroll@munsch.com
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
Telephone: (214) 880-1004
Facsimile:  (214) 855-7584

**EARL L. INGLE**
State Bar No. 24097234
**MUNSCH HARDT KOPF & HARR, P.C.**
eingle@munsch.com
700 Milam Street, Suite 800
Houston, Texas 77002
Telephone: (713) 222-4075
Facsimile:  (713) 222-5886

4868-2693-0592v.1